*Dorsey vs. Simmons et al.*

NANCY DORSEY, plaintiff in error, *vs.* IRBY D. SIMMONS *et al.*, defendants in error.

1. A legatee or the purchaser of a distributive share in an estate may, in equity, set off the same against a judgment in favor of the executor against such legatee or owner of such share, where no special reason exists for the collection of the judgment by the executor.

2. The claim set up by the executor in this case for counsel fees and cost paid under the circumstances proven, and when there was enough money in hand at the time (1863) to pay the same, and which was afterwards funded by the executor in Confederate bonds and lost, is not a sufficient reason.

3. One of the shares in the estate, proposed to be set off, or allowed against the judgments, belongs to complainant by survivorship, and she is not affected by a previous bill filed by her husband (now deceased) for the same purpose as this, and dismissed by him. And though the judgments sought to be enjoined were obtained against her husband, yet as they are levied on property belonging to complainant and would, if collected, be assets to which her legacy would attach, she has not lost her right to be heard.

4. The facts shown at the hearing for an injunction, entitle complainant to have the collection of the judgments stayed until her rights can be determined at the final trial.

Injunction. Administrators and executors. Legacy. Judgment. Before Judge HALL. Spalding County. At Chambers. August 23d, 1873.

Nancy Dorsey filed her bill against Irby D. Simmons, and Robert S. Connell, sheriff, making substantially the following case :

She is the daughter of Polly Johnson, who was daughter of Charles Simmons, late of Oglethorpe county, who departed this life in the year 1847, testate, bequeathing all of his property to his wife, and at her death to be equally divided among his five children. Abram Simmons qualified as executor in December, 1847, and took possession of all the estate of said deceased. Polly Johnson, mother of complainant, died in the year 1856, and Nancy Simmons, life tenant under the will, died in the fall of 1862. Abram Simmons, executor, then sold the land and perishable property of his deceased

father for about $1,700 00, and there being no debts, and but few expenses, at least $1,500 00 remained in his hands for distribution among the five legatees, one-fifth of which, $300, became the absolute property of the six surviving children of Polly Johnson.

Abram Simmons, the executor, managed and controlled the large estate of Charles Simmons, from 1849 to 1862, during the widowhood of the life tenant, with no expenses except the maintenance of a decrepid old lady. He reported no income, nor the sale of the lands. In December, 1862, he applied to the Ordinary of Oglethorpe county and obtained the appointment of three commissioners to appraise and divide the negroes of said estate in kind. The division was made in January, 1863, and four negroes were set apart for the heirs of Polly Johnson. They were taken possession of by Abram Simmons, who was appointed as trustee for Polly Johnson in the will of said Charles Simmons. This distribution was final and conclusive, and the negroes set apart for each of the other legatees were delivered to them; but Abram Simmons hired out the negroes set apart for the heirs of Polly Johnson in January, 1863, when John S. Dorsey, husband of complainant, William Johnson, her brother, and Joshua Moore, who married the sister of complainant, hired said four negroes, John S. Dorsey taking two, and giving his note, payable to said Abram as executor, for $13 00, with William Johnson as security, said William Johnson taking one negro and giving his note, with John S. Dorsey as security, for $35 00; Joshua Moore taking one negro and giving his note, with John S. Dorsey as security, for $40 00. Said Johnson, in his own right, and said Dorsey and Moore, in right of their wives, were each entitled to one-seventh of the legacy going to Polly Johnson, which was, including cash from sale of land and personal property, and the hire of negroes, represented by said notes, about $400 00, or $57 00 to each, which should have been paid to them at that time, but said Abram Simmons fraudulently refused and neglected to settle with them.

Abram Simmons died in 1864, and Irby D. Simmons, of Spalding county, qualified as his administrator and took possession of said notes, and having enmity against Dorsey and his sons, did, to annoy, etc., in April, 1866, commence suit on all of said notes against said Dorsey only, in the Justice Court of the one thousand and sixty-ninth district, Spalding county, when Dorsey, Moore and Johnson filed a bill and obtained an injunction restraining said suits. Said Irby D. answered said bill, admitted all the allegations, but set up some pretext in avoidance. Said bill continued in Court until February, 1868, when Dorsey was, by reason of his feeble health and old age, incapable of giving it attention, and it was dismissed, and soon thereafter said Irby D. procured judgments to be entered on said notes, making no effort whatever to obtain judgments against said Moore and Johnson, although principals, and residents of Fayette and Coweta counties, and able to pay the same, thus increasing the risk of Dorsey as security. There has been no representation on the estate of Charles Simmons since the death of said Abram, and no representation has ever been obtained on the estate of Polly Johnson. Irby D. Simmons has no right, title or interest in either of said notes or the judgments obtained thereon, no right to sue or collect the same; still he is, to the great injury of complainant, fraudulently seeking to sell certain lands conveyed to her as a homestead in lieu of dower by her husband in 1866, before any judgment had been obtained against him, having had said *fi. fas.* levied on ninety-eight acres of her land. John S. Dorsey died in June, 1869, leaving some personal property, having deeded to complainant three hundred acres of land in 1866 in lieu of dower, said lands levied on being the most valuable portion thereof. One Heronton has the whole of said lands levied on to satisfy a judgment against said Dorsey, obtained November, 1866, for about $900 00. Peter Hindsman is claiming payment of a large debt against said Dorsey, which will destroy her life estate under said deed, and if allowed to sell, will deprive her of dower.

Complainant charges that defendant is using the patrimony of her ancestors to deprive her of her home in her old age, and prays that he may be perpetually enjoined from enforcing the collection of said *fi. fas.*, that they may be declared null and void; also, that commissioners may be appointed to lay off and assign her dower and a sufficiency of household and kitchen furniture; that said Simmons may account to her for her distributive share of her mother's legacy which went into the hands of said Abram Simmons, and that the portions of Joshua Moore, William Johnson, and the shares bought by said Dorsey, and also the share bought by said Moore, or so much thereof as may be necessary to satisfy said *fi. fas.*, may be applied to the extinguishment of the same; that the writ of subpœna may issue.

The affidavit of Joshua Moore, in support of the bill, was, in substance, as follows: Has resided in Coweta county for forty-six years; is now, and has been all that time, fully able and willing to pay his debts, and if Irby D. Simmons had obtained judgment on the $40 00 note, property could have been found of his to pay said debt; thirty-four years ago he married Elizabeth, daughter of Polly Johnson, and granddaughter of Charles Simmons, who died in 1847; Abram Simmons qualified as his executor; said Abram resided on the farm with the widow for several years and superintended said farm, which consisted of about four hundred acres, two hundred of which was cleared; he, as executor, worked from eight to twenty good hands, made large crops of corn and cotton; the cotton was sold and most of the proceeds were converted to his own use; did not account to legatees for any profits on the farm. He furnished the widow with a scanty living, as he knows from having visited her; he dealt out provisions to said widow in small allowances, measuring it as if for servants. During the time said Abram controlled said estate, four, and sometimes six, valuable negro men were hired out annually for $150 00 to $200 00, they being mechanics and railroad hands; he never accounted for any portion of said hire in his returns, and deponent is well satisfied, from his

Dorsey *vs.* Simmons *et al.*

own observation, that very little, if any, was paid over to or for the widow, and, after inquiry, he could not ascertain that any of this money had been applied to the payment of debts.

Deponent and John S. Dorsey were present at the distribution of the slaves of said estate, and he knows, of his own knowledge, that Abram Simmons claimed to represent the children of Polly Johnson, as trustee, appointed in the will. Only deponent, Dorsey, and William Johnson, of Polly Johnson's heirs, were present. Polly Johnson died two or three years before her mother, leaving living nine children—four, to-wit: Solomon, Luke, Isabell and Travis died before Nancy Simmons, without any wife, husband or children, leaving only five heirs of Polly Johnson to participate in said legacy, to-wit: Nancy Dorsey, Elizabeth Moore, Charles and William Johnson, and John Johnson, who has since died, leaving two children, who are also dead as deponent is informed. John S. Dorsey bought and paid for the share of Charles Johnson in this estate, and deponent bought and paid William Johnson for his interest in said estate, and deponent believes that he and Mrs. Nancy Dorsey, by inheritance and purchase, are entitled to all of the estate of Polly Johnson. Deponent bought the land of Charles Simmons' estate when sold by said Abram, in February, 1863, at the price of $950,00, and paid for it in cash. The corn, cotton and other produce of the farm for 1862, was sold by said Abram, and the proceeds never accounted for, so far as he can learn. At the division of the negroes some $30,00 was assessed against the lot assigned to the heirs of Polly Johnson, which sum was paid by deponent and Dorsey, in cash. Deponent, Dorsey and William Johnson urged said Abram to pay to them their shares of said estate at the time the negroes were divided, which he refused to do. Deponent, having bought the interest of William Johnson, took possession of the negro hired by him and carried him and the one hired by deponent to Coweta county. No effort was ever made to recover said negroes from deponent, and no demand was ever made for payment of notes given for hire, and if it had been demanded, payment would have been refused,

because one-fifth of said negroes belong to him in right of his wife, and he bought another fifth from William Johnson, and there was an agreement by which deponent was to keep these two negroes and settle with John Johnson's heirs, and Dorsey was to keep his two negroes and settle with Charles Johnson, which he did by paying him for his entire share. Deponent further states from his best information acquired by inquiry at the time of distribution, no payment was made to any of the heirs of Polly Johnson. Deponent, Dorsey, and William Johnson also insisted on being allowed to take negroes and settle with other heirs of Polly Johnson, and offered to give receipts or bonds to save said Abram harmless, still he refused, but proceeded to hire out said negroes, when deponent hired one at $40,00, William Johnson one at $35,00, Dorsey hired two, both small and young, for about $12,00 or $15,00. Notes were given bearing date in January, 1863, for respective amounts, payable to Abram Simmons, executor, Dorsey signing as security for deponent and Johnson, and Johnson signing as security for Dorsey. Dorsey brought his two negroes to Spalding, and some time in the fall of 1863 said Abram Simmons proceeded by possessory warrant to obtain possession of said negroes, but the Court held that Dorsey was entitled to the same. Deponent further states from his best information acquired by strict inquiry at time of distribution, and from his own knowledge, that the heirs of Polly Johnson would, on a full accounting for all the assets which went into the hands of said Abram, be entitled to some $2,000 00 or $3,500 00, besides the negroes. Deponent, Dorsey, and William Johnson demanded their shares in the same, and could not get them. Deponent does not believe that any of the heirs of Polly Johnson ever received anything from said Abram. Never heard of any of the heirs of Polly Johnson being notified to come and get their portion; he never had any such notice. Neither deponent, Dorsey, or William Johnson could get any money from said Abram, although they demanded it. Deponent made every possible effort to obtain the portion he owned at the time the land was sold,

and said Abram peremptorily refused to pay. Never has been sued on his note, and never knew of the bill filed in his name in Spalding; if he had been fully informed of its tenor he would have pushed forward with all energy, and sought in that to have obtained a judgment for a large balance due him after deducting said note.

The defendant demurred, pleaded and answered, as follows:

1st. Demurs because all the equities in the bill have been passed on and adjudged, as shown by bill, and complainant has had her day in Court and should have objected to the claim going into judgment.

2d. No equity in the bill.

Pleads that all the matters in complainant's bill have been adjudicated, in this, that suit was brought on the notes, and John S. Dorsey filed a bill to enjoin the same, and after said bill had been pending for a time, it was dismissed, and subsequently judgment was rendered on notes in a Justice's Court, after full notice, which judgments are pleaded in bar to any right claimed by complainant in her bill.

The answer admits that complainant is the daughter of Polly Johnson, that Polly Johnson died before Nancy Simmons, and after the death of Charles Simmons; that Abram Simmons qualified as executor of Charles Simmons in 1847, and took possession of his estate, but did not sell the same until after the death of Nancy Simmons, who had a life estate therein. Thinks the land sold only for $800 00, sale of perishable property amounted to $600 00, all of which was received in Confederate money and divided among the legatees, except the heirs of Polly Johnson. Is informed that the executor notified the heirs of Polly Johnson, of whom Dorsey was one, to come and receive their portion, which they failed to do, and the executor, under legal advice, under the laws then of force, invested the same in Confederate securities, which discharged the executor on account of said fund. Denies that Abram Simmons managed the estate from 1849 to death of life tenant, and, on the contrary, alleges that Nancy Simmons was entitled to all the income from said estate, and

Abram was not responsible for the same. Division of negroes took place, as alleged, in the latter part of 1862, and four negroes were set apart to the heirs of Polly Johnson and left in the hands of Abram for said heirs, as trustee appointed under the will. The negroes awarded to the other legatees were delivered to them, and the reason why the negroes were not delivered to the heirs of Polly Johnson, was that she was dead, and having had seven or eight children, some of whom were dead, and had left minor children, no one could give him receipts. He was, therefore, forced to retain them until a division could be had and proper parties qualified to act for the minors. Hired out negroes to 1st of June, 1863 ; hired to the persons and for the amounts set out in bill. William Johnson, and wife of Joshua Moore are children of Polly Johnson. Positively denies that complainant was entitled to one-seventh of the hire of said slaves at time of filing said bill, or that any balance was due her from the estate of Charles Simmons, deceased. Nothing was due the heirs of Polly Johnson, on the contrary, on the division of the slaves the shares set apart to Polly Johnson were required to pay back to the estate $30 00. Said negroes were hired only until 1st of June, 1863, at which time it was expected a division could be had with the heirs of Polly Johnson. When this period expired, said Abram demanded said negroes of said Johnson, Moore and Dorsey, and they refused to deliver them up, and said Abram was forced at great expense to institute legal proceedings to recover said negroes. Said Johnson, Moore and Dorsey appropriated to their own use the whole of the hire of said slaves from 1st of January, 1863, until emancipation. Denies that said Abram fraudulently withheld the portion coming to the heirs of Polly Johnson ; only delayed until proper parties could be appointed to receive the same. Abram Simmons died testate in 1864, and Irby D. qualified as his executor and took charge of the notes on Dorsey and others. They declined to pay, and he brought suit. Dorsey, Moore and Johnson filed a bill in Spalding Superior Court to enjoin said suits, and said bill was dis-

missed at the February term, 1868, not because Dorsey was old and infirm, nor was it dismissed without the knowledge of complainant, for Dorsey was sent for and came into Court and stated that he would have no more to do with it, and the case was dismissed in open Court. Judgments were afterwards obtained on said notes, which are still open and binding. Defendant stands charged as executor of Abram with estate of Charles Simmons, deceased. Polly Johnson has no estate, having died before the life tenant, and only a life estate was to vest in her under the will, hence it went to her children. Defendant, as executor of Abram, has paid expenses of litigation in trying to get the negroes back, amounting to some $82 00, which was incurred during the lifetime of said Abram by Cicero P. Simmons, as his agent, which this defendant has paid to said Cicero. This amount, with interest, defendant is entitled to recover on these notes. Abram Simmons was bound to account to Polly Johnson's heirs for the hire of the negroes, and defendant was bound to sue for the same, and having obtained judgment, is seeking to enforce the same for the purpose aforesaid. Knows of no deed made by Dorsey to complainant. If made, it is fraudulent and void as against this defendant. No homestead taken would be good against this defendant.

Dorsey left three hundred acres of land, and personal property worth from $5,000 00 to $7,000 00. Could save her dower right by giving notice of same at sale. Could have year's support by applying for same. Complainant has, since the death of her husband, sold land at from $30 00 to $40 00 per acre, realizing large sums of money.

Other affidavits and documentary evidence were read before the Chancellor, but being unnecessary to an understanding of the decision, are omitted.

The injunction prayed for was refused, and complainant excepted.

BOYNTON & DISMUKE, for plaintiff in error.

SPEER & STEWART, for defendants.

TRIPPE, Judge.

1. It has been more than once held by this Court that a legatee, or the purchaser of a distributive share in an estate, may, in equity, set-off the same against a judgment in favor of the representative of the estate against such legatee or owner of such share, unless some special reason exists for the collection of the judgment by the executor: *Moody vs. El-lerby, administrator,* 36 *Georgia,* 666 ; *Carter vs. McMichael,* 20 *Ibid.,* 96 ; *Swift vs. Swift,* 13 *Ibid.,* 140.

2. The reason set up by the executor in this case, that in 1863 counsel fees and cost had been paid, and that he desires reimbursement for the same, we do not think sufficient, under the circumstances connected therewith. It appears that there was Confederate currency in hand at that time, more than was necessary for their payment. This currency was afterwards funded by the representative in Confederate bonds and lost, or became worthless. It would hardly be equitable for an executor, who had such funds in hand during the war, and who paid expenses accruing in 1863, to claim now, when he says that such currency became worthless in his hands, that he should be repaid with what little of good assets that may be undisposed of. It does not appear but that he made the payment with Confederate currency. The debt was contracted in 1863, and paid then. If paid in that currency, the amount he held was sufficient for the purpose, or the amount he held and funded in 1864 was sufficient to have repaid him. We think, at least, that it is proper for this matter to be inquired into.

3. The former bill filed by the husband of complainant, and which was dismissed, does not affect the right of the wife in this case. The husband has since died. The distributive share of the wife, under her grand-father's will, survives to her, and her right to assert all her equities is unaffected by the former proceedings, which were dismissed without any judgment or decree affecting the merits. The judgment sought to be enjoined, and against which the set-off is prayed, is

against the deceased husband. It is levied on land which she holds under her husband. It seeks to take property from her which would, by its sale, become assets to which her legacy would attach. All the reasons which apply to the prinple that would allow the set-off, if the judgment were against her, exist in this case. There is no difference, in reason or equity, between the one case and the other. If there appear no necessity why the debt should be collected, except to pay the money back to the one from whom it is, to all intents and purposes, collected, equity will restrain the collection : *Moody vs. Ellerby, supra.*

4. We, of course, do not determine what may be the facts shown at the final hearing. But what appeared on the application for the injunction entitle the complainant to have the collection of the judgments stayed until her rights can be determined at such trial.

Judgment reversed.